In the Matter of CHARLES E. CHERRY, an Attorney, Respondent.

First Department, March 10, 1930.

*Isidor J. Kresel [Abraham Freedman* with him on the brief], for the petitioners.

*Cullen & Dykman [Timothy J. Shea* of counsel; *Dimitri G. S. Eristoff* with him on the brief], for the respondent.

Dowling, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division of the Supreme Court of the State of New York, Second Department, on March 2, 1925.

Respondent is charged in the petition with misconduct as an attorney at law as follows:

(1) That between January 1, 1925, and July 1, 1928, the respondent, who was employed as superintendent of claims by the Employers' Liability Assurance Corporation, caused agents of that company, not members of the bar, to solicit and obtain retainers for Everett W. Bovard, a member of the bar, of upwards of seventy persons who had suffered personal injuries; that said agents of the company, pursuant to the directions of the respondent and in order to induce a number of injured persons to retain Bovard, represented to them, in upwards of ten instances, that in the event they retained Bovard they would receive certain sums for their maintenance during the pendency of the suits; that pursuant to respondent's directions, persons who retained Bovard, in upwards of ten instances, were given various sums of money during the pendency of their actions; that Bovard accepted said retainers and that the respondent received from him as compensation for the services rendered by him in the solicitation and procurement of said retainers, a share of the fees received by Bovard.

(2) That the sums of money given to the persons who retained Bovard as aforesaid, were given pursuant to the instructions of the respondent and without the knowledge or consent of the officers of the company, and that the respondent thereby used the facilities of said company for his own purpose.

(3) That the respondent, while occupying the position aforesaid and with knowledge that an investigation (the so-called ambulance chasing investigation) was about to be made by the court regarding certain improper practices and with the knowledge that the records of said company contained information which would be useful to the court in such investigation, altered, destroyed or removed from the files of the corporation records which he believed would establish or tend to establish improper conduct on the part of the agents of

said corporation or of other persons, or caused them to be altered, destroyed or removed, with intent to hinder and prevent the establishment of such misconduct.

After respondent answered, the matter was referred to a referee to take testimony with regard to the charges against the respondent and to report the same with his opinion thereon. The referee has duly reported and the petitioners now move that respondent be adjudged guilty of professional misconduct as charged in the petition, and for such action as this court may deem proper.

The referee has recommended that the acts of the respondent in receiving fees from Bovard be disapproved and that in all other respects the first charges be dismissed. He also recommended that the second and third charges be dismissed.

The facts in this matter, in so far as they relate to the first and second charges, are similar to those developed in *Matter of Bovard* (228 App. Div. 263), recently passed upon by this court. Respondent, during the period covered by the charges herein, was superintendent of claims in the New York office of the Employers' Liability Assurance Corporation, which corporation had its principal or head office in Boston. That corporation had about 15,000 accident claims against it each year, of which approximately 6,000 were claims under the Workmen's Compensation Law and against which it had insured employers. In approximately 200 such claims the claimants had common-law causes of action against the third parties for personal injuries. The interest of the insurance company in having claimants prosecute such causes of action against the third parties is described in our opinion in *Matter of Bovard (supra)*. It is the activity of respondent in securing for Bovard retainers from claimants having such causes of action that is the basis for the first and second charges herein. In May, 1925, respondent issued instructions to the investigators " to the effect that in the event that an injured man should meet with an accident which arose during the course of his employment, and as a result of a third party being involved, and the man desired an attorney, the name of Mr. E. W. Bovard should be suggested as a capable and reputable attorney." In December, 1927, these instructions were supplemented by a written order directing that " Mr. Bovard should be used exclusively in those cases where we suggest an attorney." Blank form of retainers for Mr. Bovard were used by the investigators. Respondent testified that he did not know of the existence of such forms and the use thereof by the investigators until some time the latter part of 1927, and after he discovered that his investigators were obtaining retainers for Mr. Bovard he issued instructions that that must stop. In any event,

as a result of respondent's activity, Bovard was retained in about seventy-one third party cases in the years 1925 to 1928. Respondent received from Bovard some part of the latter's fee in all these cases that were sent to him. Bovard's fees totaled $12,739.22. Respondent received from Bovard $3,400. The referee said, referring to these payments to respondent: " Notwithstanding the fact however that it is lawful for attorneys to divide fees I think it should not be countenanced in circumstances such as are here disclosed. Here the respondent was not practicing his profession and in sending business to Bovard he was acting in an executive capacity for a corporation by which he was regularly employed and from which he was receiving a salary. Under such circumstances a time might come when it would be to the interests of his employer to have the legal business in which it was interested sent to other attorneys and thus there would arise a conflict between his personal interests, which might be furthered by the continuance of relations with the attorney who shared fees with him, and the duty owing to his employer which would require that the legal business be referred to other attorneys. No such conflict of interests arose in the instant case."

In justification of these payments it is urged that they were made for professional consultations and advice concerning certain of the claims on account of which the payments were made. We have considered the nature of the services rendered by respondent to Bovard in connection with these claims, and agree with the referee, who said in the Bovard matter that respondent in advising and assisting Bovard was furthering the interests of his employer. There is evidence that respondent's superior officers in the home office of the insurance corporation knew of these payments by Bovard to respondent and did not disapprove thereof. Notwithstanding this attitude on the part of respondent's employer, we think the high standard set for the members of the legal profession compels disapproval of a relationship which could not but lead to a divided loyalty.

Aside from these payments, however, we think respondent is subject to censure for his activity in securing retention of Mr. Bovard to represent claimants having these third party claims. It is one thing to advise claimants as to their rights in relation to a cause of action against a third party, and to further the interest of one's employer by urging the prosecution of such causes of action. But it is another thing to solicit the retention of a particular attorney to prosecute such actions. Respondent must have known that is a violation of the Canons of Professional Ethics. We cannot help but ask here what respondent's motive was in urging

the retention of Mr. Bovard. Was it purely furtherance of his employer's interests? Or was it the possibility of sharing in that attorney's fees?

The maintenance of injured claimants, as charged in the second count, was with the knowledge, consent and approval of respondent's superiors in the insurance corporation, and for its benefit, and not for the purposes of respondent. We agree with the referee that these charges should be dismissed.

In reference to third charge, Harry E. Wieting, actively in charge of the compensation department of the Employers' Liability Assurance Corporation, testified at the investigation before Mr. Justice WASSER-VOGEL that he received instructions from Mr. Cherry, the superintendent of claims, to review and remove from the files objectionable matter. This objectionable matter was described by him as memoranda that the investigators used the strong arm in persuading a man to retain Mr. Bovard or any other lawyer. Wieting's own instructions to the men who were searching the files were " To mark anything where there was an attorney retained." Wieting checked up to see that the cases had been reviewed. He gave instructions to Miss Rump to transcribe certain portions that had been marked. Miss Rump recopied or had recopied the pages so indicated, omitting therefrom portions marked to be omitted. The originals were destroyed. Miss Rump testified there were from about fifty to seventy-five so treated. Respondent testified before the referee herein that in anticipation of the investigation which it was expected the Appellate Division would order of the negligence situation in New York city, in February or March, 1928, he gave instructions to Mr. Wieting, Mr. Ahmuty, Mr. Haight and Mr. Horeau. The instructions given to Mr. Wieting were " to see that his files were in good shape." Part of respondent's testimony is as follows: " Q. You knew that those files were going to be examined? A. Yes. Q. Didn't you think as an attorney it was your duty to preserve the files in the form in which they were so that no facts would be altered or eliminated? A. That was my purpose distinctly. Q. Your purpose was to have no change made in the files? A. Except in the deletion of any scurrilous or disparaging statements about attorneys or an assured, or such as investigators were in the habit of making. * * * Q. In other words, to see that the instructions that you had previously given to keep out what you call scurrilous and improper matter had been carried out? A. Precisely. Q. And in case that he found that those instructions were not carried out in any particular files to carry them out then? A. Yes. Q. So that the files as they were presented to the investigator would not

contain anything that you regarded as objectionable? A. Anything scurrilous or of a disparaging nature or a reflection on any attorney or client or assured or Judge or anybody. Q. Didn't you think that as an attorney it was your duty to preserve inviolate until they were examined the files of the company? A. Not those particular things. They were never a proper part of the files. Q. Did you think that was for you to determine or for the investigation to determine? A. For me to determine, to see that scurrilous and libelous matter was not put in the files.''

Asked how he accounted for the misinterpretation of his instructions by Mr. Wieting, respondent testified: '' I think it was because he felt at least a moral, say, not a legal responsibility for what had been done in his department in the way of handling these third party cases with Bovard and other attorneys and certain of the investigators felt the same way about it, and their object was to cover up or conceal the things that they had done in — different from my instructions. * * * I think their sole object was to cover up their own tracks, to protect themselves so that there couldn't be any charge against them, or later some action begun by the company in the way of discharging them for something that they had done in — beyond their duty, or beyond what they had been instructed to do. I think it was a fear they had they would be exposed in some manner in this investigation that actuated them to destroy those memoranda.''

Before the referee herein Wieting testified that respondent's instructions with regard to the files were to review all third party cases and remove from the files all objectionable matter, such as scurrilous statements by the investigators, disparaging, derogatory statements. Asked what respondent said to him, Wieting answered: '' I was to remove such statements made by the investigator concerning the interested parties, such as doctor, lawyer, claimant or assured, and also to remove from the files any statement by the investigator concerning or covering his over-zealous efforts to retain an attorney.''

Weiting testified that they deleted references to obtaining Mr. Bovard in the third party cases, and any other reference to any other attorney as well. It was demonstrated, however, that such references were not deleted in every case. There is the suggestion that Bovard learned the deletion was taking place and called respondent up and spoke to him about it and orders were given to stop it.

The referee said: '' * * * I am of opinion that it is improbable that respondent directed or intended that statements with respect to over-zealousness of investigators in advising or urging Bovard

be retained should be deleted from the files. Such directions, if given, could not have been for the purpose of concealing the fact that investigators were instructed to suggest to claimants that they retain Bovard or to suppress the evidence thereof for the direction if followed would not have resulted in the elimination of *all* reference to suggestions by investigators to retain Bovard but only such references as showed over-zealousness or over-persuasion in that regard by investigators. It was known to all investigators and apparently to all or most of those employed in the department as well as to respondent's superior officers that investigators were instructed to endeavor to have such claimants, who had no attorney, retain Bovard. There is no evidence of any attempt on the part of Bovard to conceal this nor is there any evidence other than this testimony of Wieting of any attempt on the part of the respondent to conceal it. Both Bovard and the respondent testified not reluctantly but freely and frankly before Mr. Justice WASSERVOGEL and on the hearing before me with respect to everything that was done by or known to either of them in the premises. I am of opinion that it is more probable that such deletions were directed by Wieting on his own responsibility on account of his having exceeded his authority in preparing and giving to the investigators a form of retainer to be used by them in efforts to secure the employment of Bovard."

The referee advances other motives which may have prompted Wieting to make the deletions described, which it is not necessary to recite here. It is sufficient that we agree with the referee that respondent did not authorize the attempt to conceal efforts to secure retainers for Bovard.

The referee in his report says: " He [respondent] owed a duty to his employer to see that any libelous matter in these reports should not be made public for that might subject his employer to litigation and to criticism and might injure its business."

The referee concludes: " I find nothing reprehensible in the conduct of the respondent with respect to the directions he gave concerning the third party files."

We do not follow the referee in this conclusion. It was the paramount duty of the respondent, as a member of the bar, to aid in clearing the profession of a condition that had become scandalous. The attempt to " dress up " his files we view as an effort to hinder the investigation. The evil of such an attempt is well demonstrated by the partial deletion of references to retainers for Mr. Bovard. It was not for the respondent to determine what should be disclosed in the investigation. The justice presiding at the investigation would have seen to it that the interests

of respondent's employer were properly protected, and any improper or scurrilous references to third parties excluded. This general house-cleaning by respondent on the eve of an important judicial investigation into abuses of which he must have had intimate knowledge, does not appeal to us as having been made innocently or in good faith. The first consideration with him should have been the honor of his profession and his duty to aid in the approaching investigation, not to destroy evidence which might have helped in its successful outcome. It is impossible now, the evidence having been destroyed, to tell just how important the evidence might have proved. We think the interests of justice will be served if respondent is suspended from practice for the period of two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

MERRELL, FINCH, MCAVOY and PROSKAUER, JJ., concur.

Respondent suspended for two years.